UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO: 0:22-cv-62082-HUNT
[CONSENT CASE]

ZEPHANEAH RENTON, on behalf of
herself and all others similarly situated,

    Plaintiffs,

vs.

5th BITE OF THE APPLE LLC,

    Defendant.
_____/

### PLAINTIFF'S *UNOPPOSED* MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, ZEPHANEAH RENTON ("Plaintiff"), hereby files this *Unopposed* Motion for Final Approval of Class Settlement and Incorporated Memorandum of Law, as follows:

**I.    BACKGROUND**

Defendant, 5th BITE OF THE APPLE LLC ("Defendant") operates Black Rock Bar & Grill located in Fort Lauderdale, Florida. Plaintiff alleges that during periods within the past 5 years Defendants employed her and other restaurant servers and bartenders (hereinafter "Servers" and "Bartenders") and failed to compensate these Servers and Bartenders in accordance with the Florida Minimum Wage Act ("FMWA") and provisions of the Fair Labor Standards Act ("FLSA"). Plaintiff alleges three (3) separate counts for violations of the FMWA under Fed. R. Civ. P. 23: (i) Tip Notice Class; (ii) 80/20 Class; and (iii) Substantial Side Work Class. *See* D.E. 54. On June 23, 2023, the Court preliminarily approved a class settlement which created a common fund of $100,000.00 to be distributed on a claims-made basis to members of the class. *See* D.E. 54-1. The Notice period has now expired, and the settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the Florida Minimum Wage Act ("FMWA"). Attached to this motion is Class Counsel's declaration (the "Richards Declaration") and the Declaration of Stephanie Molina Regarding

Notice and Settlement Administration (the "Molina Declaration") submitted on behalf of ILYM Group – the approved Claims Administrator in this case. *See* Richards Declaration at **Exhibit A;** *see, also,* Molina Declaration at **Exhibit B**. The Richards Declaration provides information concerning the Notice Period, Participation Rates Amongst the Class, and other information supporting the final approval of this settlement. The Molina Declaration provides information concerning the administration of the claims period including, but not limited to, the number of claims submitted, number of opt-outs submitted, number of objections, and the average settlement share. With this agreed motion, Plaintiff respectfully requests that the Court: (1) grant final approval of the Stipulated Class Action Settlement Agreement and Release ("Settlement Agreement"); (2) certify the class of Servers and Bartenders; (3) approve the distribution of settlement payments to qualified members of the class; (4) approve the $8,300.00 payment to ILYM Group for administration of the class settlement; (5) approve the $15,000.00 non-FMWA consideration payable to Plaintiff; and (6) approve the distribution of court-approved attorney's fees and costs for class counsel.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

### a. Factual Allegations

Plaintiff worked for Defendant as a Server/Bartender in August 2022. Including Plaintiff, there are approximately 158 current and former Servers and Bartenders who worked for Defendant from May 26, 2020, through June 23, 2023, and comprise the putative Rule 23 class. *See* **Exhibit A**. Plaintiff filed this class action lawsuit seeking to recover unpaid wages from Defendant based on violations of the Fair Labor Standards Act ("FLSA") and Florida Minimum Wage Act ("FMWA") for purported failure to pay proper minimum wages to herself and other Servers and Bartenders at the restaurant from 2017 to the present.[2] Plaintiff alleges that during periods of her employment, she and other servers and bartenders were purportedly not properly notified that Defendant would be taking a tip credit toward the mandated Florida minimum wage, were required to spend more than 20% of their workweek performing non-tipped side work for which they were paid a sub-minimum wage, and were required to spend more than 30 continuous minutes on any

---

[1] Class Counsel has contemporaneously filed an *Unopposed* Motion for Approval of Attorney's Fees and Reimbursement of Expenses and Incorporated Memorandum of Law in Support.

[2] Defendant only began operating the restaurant on May 26, 2020.

shift performing non-tipped side work. Plaintiff alleges that Defendant is liable to her and a class of similarly situated Servers and Bartenders for an amount equal to the $3.02 tip credit for each hour they worked at the restaurant. Plaintiff, on a collective basis, also alleges that Defendant violated the FLSA's provisions by failing to pay her (and other bartenders and servers) at least the federal minimum wage for certain hours worked.

This lawsuit has been pending since November 2022. *See* D.E. 1. Although this settlement has been reached at a relatively early procedural posture, Defendant asserted a number of defenses in its Answer to the Amended Complaint and opposition to conditional and class certification. The Parties engaged in extensive discovery and litigated the issue of class certification. *See* **Exhibit A**. The Parties have further taken multiple depositions. *See* **Exhibit A**. Defendant has provided verified answers to interrogatories along with production of hundreds of relevant documents in this case. While Defendant is willing to fully resolve these claims on a class-wide basis, Defendant maintains that no violations of law whatsoever were committed. The Parties also continue to disagree about the viability of class certification, and the scope, type, and amount of alleged damages each Server and Bartender would be entitled to receive (if any), even if Plaintiffs were ultimately to prevail in the case. Defendant asserts that it always complied with applicable Florida and federal law, and always paid their Servers and Bartenders in accordance with applicable law.

b. **Procedural History**

Plaintiff commenced this lawsuit by filing her Class Action Complaint for Damages and Demand for Jury Trial on November 9, 2022. *See* D.E. 1. Plaintiff thereafter filed an Amended Class Action Complaint for Damages and Demand for Jury Trial ("Amended Complaint") on December 7, 2022. *See* D.E. 15. Defendant filed its Answer and Affirmative Defenses to the Amended Complaint on January 11, 2023. *See* D.E. 28. On February 2, 2023, the Parties attended a settlement conference with Magistrate Judge Hunt. *See* D.E. 31. The settlement conference resulted in an impasse and the litigation proceeded. *See* D.E. 34. The Parties then engaged in extensive discovery, including the taking of multiple depositions. Plaintiff was deposed on March 14, 2023. Defendant's designated Corporate Representative was deposed on March 17, 2023. The Parties thereafter engaged in detailed discussions regarding resolution of this matter on a class-wide basis, and ultimately agreed to proceed with class settlement discussions. *See* **Exhibit A**. To date, hundreds of pages of documents have been exchanged by the Parties, including payroll reports, employee rosters, restaurant policies, and other relevant information concerning the claims

alleged in this case. *See* **Exhibit A**. Plaintiff's counsel has conducted their own independent investigation into claims, including an independent evaluation of the number of Servers and Bartenders employed by Defendant during the relevant time period. *See* **Exhibit A**. Defendant provided verified information concerning the total number of hours worked by Servers and Bartenders from May 26, 2020, through the present. *Id.* Defendant then agreed to enter into a class-wide resolution (for settlement purposes only) to fully resolve the claims in this lawsuit and provide a reversionary common fund that will allow Servers and Bartenders to participate in a claims process and receive significant and meaningful compensation to be administered by a third-party Claims Administrator.

    c. **Discovery**

The Parties both propounded written discovery in this case and Defendant produced payroll records kept and maintained during the relevant time period and the total number of hours worked by Servers and Bartenders from May 26, 2020. During that time period a total of 77,132 hours were worked. On March 17, 2023, Plaintiff deposed Defendant's Corporate representative who provided relevant information concerning various practices in the restaurant. Plaintiff has been given an opportunity to review and evaluate Defendant's corporate policies, payroll records, server rosters, side work assignments, internal records pertaining to shifts worked by the servers, and work schedules. In addition, Plaintiff's counsel conducted an extensive interview with Plaintiff concerning the veracity of these documents and comparing the documentation to information kept and maintained by Plaintiff during the course of her employment. *See* **Exhibit A**.

    d. **Settlement Negotiations**

Prior to filing suit Plaintiff sent a pre-suit notice to Defendant pursuant to Fla. Stat. § 448.110(6) in connection with the class wide FMWA claims. *See* **Exhibit A**. Defendant did not tender full payment for the settlement class to resolve the FMWA claims pre-suit. After the case was filed, on February 2, 2023, the Parties attended a Zoom settlement conference with Magistrate Judge Patrick Hunt. *See* D.E. 34. During that settlement conference, the Parties did not resolve the claims, but were able to make some progress concerning the scope and viability of certain claims in this case. Following the settlement conference, the Parties engaged in significant discovery prior to revisiting resolution discussions. *See* **Exhibit A**. Ultimately, the Parties have engaged in multiple days of negotiations in this case after extensive discovery had been exchanged concerning the size of the class and the total number of hours worked by members of the class during the

relevant time period. After lengthy and additional negotiation and phone conferences, the Parties entered into a formal Stipulation of Class Action Settlement Agreement and Release which was preliminarily approved by the Court and is now presented for final approval under Rule 23 of the Federal Rules of Civil Procedure. *See* Stipulation of Class Action Settlement Agreement and Release attached to **Exhibit A** as Exhibit 1.

### III. SUMMARY OF THE SETTLEMENT TERMS

#### a. The Settlement Fund

Defendant has created a reversionary settlement fund of up to $100,000.00 (hereinafter "the Fund"). *See* Settlement Agreement at D.E. 54-1. The Fund covers awards to class members, Court-approved attorney's fees and costs, Court-approved consideration payments to Plaintiff for resolution of her non-FMWA claims and for entering a mutual general release with Defendant, and the costs of administering the settlement. *Id*.

#### b. Settlement Class Release

Class Members who did not opt out of the settlement are releasing all Florida Minimum Wage Act ("FMWA") claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation. *Id*. The Settlement Class Release is sufficiently narrow and applies only to claims that could have been asserted under the FMWA. No class member (other than the Class Representative) has waived any federal wage claims under the Fair Labor Standards Act ("FLSA"). Plaintiff is receiving additional consideration in exchange for the release of employment-related claims she has entered with Defendants.

#### c. Eligible Class Members

The Rule 23 class consists of 158 current and former Servers and Bartenders who performed work for Defendant at any time between May 26, 2020, and June 23, 2023. *Id.* No class members have opted out of the settlement during the Notice Period and no class members have asserted any objection to the terms of the settlement. *See* **Exhibit A**; *see, also,* **Exhibit B.**

#### d. Allocation Formula

Class members who timely submitted claim forms, will be paid pursuant to an allocation formula based on the number of hours they worked for Defendant during the applicable class period. *Id.* An IRS Form W2 shall be issued by the appropriate Defendant to Plaintiff and to each Class Member to whom compensation is found to be owed pursuant to the settlement terms, as applicable under IRS regulations. *Id.* Pursuant to the allocation formula, Rule 23 class members

will receive $0.36 for every single hour they worked during the class period. *See* Settlement Agreement. The class fund will compensate a total of 77,132 hours worked during the relevant period.

According to the Claims Administrator, a total of ten (10) valid claims will be paid. *See* **Exhibit B** at ¶16. The highest individual settlement share payable to a class member is currently estimated to be approximately $472.76 and the average individual settlement share is currently estimated to approximately $139.34. *See* **Exhibit B** at ¶17.

"Claims-made settlements have been found to be fair, reasonable, and, in fact, more than adequate in class action litigation." *See, e.g., Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371 at *20 (S.D. Fla. Dec. 15, 2021) (Goodman, J.) *citing Hall*, 2014 WL 7184039 at *6 ("There is nothing inherently suspect about requiring class members to submit claims forms in order to receive payment"); *Hamilton v. SunTrust Mortg., Inc.*, 2014 WL 5419507 at *6 (S.D. Fla. 2014) ("Filing a claim form is a 'reasonable administrative requirement' which generally does not impose an undue burden on members of a settlement class"). The Eleventh Circuit Court of Appeals has affirmed claims-made settlements affording less relief to class members than that afforded here. *See, e.g., Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015) (affirming approval of claims-made settlement offering class members between six and twelve dollars for filing a claim, as well as injunctive relief).

e. **Attorney's Fees and Litigation Costs**

Class counsel has contemporaneously filed a motion seeking approximately $50,000.00 to be paid from the Fund as attorney's fees and reimbursable costs as well in the amount of $1,500.00.[3] *See* Fed. R. Civ. P. 23(h) & 54(d)(2). The Settlement Agreement is not conditioned on

---

[3] This is within the range of a typical fee award in a common fund case. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278 at *1 (M.D. Fla. 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases"); *Wolff v. Cash 4 Titles*, 2012 WL 5290155 at *4 (S.D. Fla. 2012) ("One-third of the recovery is considered a standard in a contingency fee agreement"); *Willix v. Healthfirst, Inc.*, 2011 WL 754862 at *7 (E.D.N.Y. 2011) ("Class Counsel's request 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…'"); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960 at *4 (M.D. Fla. 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorney's fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. 2012) (class settlement approved with 33 1/3 of the common fund payable as attorney's fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011

6

the award of attorney's fees, and explicitly states that it is to be considered separately from any application for attorney's fees. *See* **Exhibit A**.

### f. Plaintiff's Non-FMWA Claims and Mutual General Release

In addition to her award under the allocation formula as a member of the putative class, Plaintiff will also receive payment in the amount of $15,000.00 to resolve her FLSA claims and for a release of employment-related claims ($5,000.00 to represent unpaid FLSA wages, $5,000.00 to represent liquidated damages in connection to the FLSA claim, and $5,000.00 as consideration for the release of employment-related claims). *See* D.E. 54-1. Separate consideration paid to a class representative from the common fund in exchange for executing a broader release than the class is permissible under a Rule 23 analysis. *See, e.g., Teahl v. Lazy Flamingo, Inc.*, 2016 WL 4942067 (M.D. Fla. 2016) (Approving additional payment to class representative in FMWA class action settlement from the common fund in exchange for class representative's execution of a general release); *John G. Baja, et. al. v. Costco Wholesale Corp.,* S.D. Fla. Case No. 0:21-cv-61210-AHS at D.E. 56 (Dec. 20, 2022) (granting final approval of Rule 23 class settlement and approving payment to individual plaintiff for release finding that this payment does not constitute an incentive award).

### IV. MEMORANDUM OF LAW

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving debts and uncertainties and preventing lawsuits." *See, e.g., In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *See* Ferron, 2021 WL 2940240 at *4 *citing Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see, also, Colourpop Cosmetics*, 2020 WL 5848620 at *3 ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements"). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466 (S.D. Fla. 2002). In evaluating a proposed class action settlement, "the

---

WL 6846747 at *6 (M.D. Fla. 2011) (approving class settlement with one-third of maximum common fund apportioned as attorney's fees).

7

district court may rely upon the judgment of experienced counsel for the parties." *See, e.g., Ferron*, 2021 WL 2940240 at *5 *citing Colourpop Cosmetics*, 2020 WL 5848620 at *3. "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Id.* Under Fed. R. Civ. P. 23(e), before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. *See, e.g., Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240 (S.D. Fla. 2021) (Ruiz, J.) (granting final approval of Rule 23 class settlement) *citing* Fed. R. Civ. P. 23(e).

Here, the issues in this case were disputed and the Settlement Agreement was negotiated at arm's length by experienced counsel, who were fully informed of the facts and circumstances of this litigation and of the strengths and weaknesses of their respective positions. *See* **Exhibit A**. There was no fraud or collusion, and the Settlement Agreement was reached after the Parties were equipped with the size of the putative class and other pertinent discovery, in addition to detailed investigations conducted by both sides, including but not limited to, review of payroll documentation and multiple depositions of employees from the subject restaurant.

### a. The Court May Properly Exercise Jurisdiction Over this Matter

The Parties stipulate that Your Honor has personal jurisdiction over Plaintiff, who is a party to the action, and over all members of the Settlement Class because they received the requisite best notice and due process. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) *citing Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950); *Colourpop Cosmetics*, 20220 WL 5848620 at *4; *see, also,* **Exhibit A**.

### b. Best Notice Practicable Was Provided to the Settlement Class

The Court's Preliminary Approval Order entered on June 23, 2023, approved the Notice procedure:

> The Court approves the proposed plan for giving Notice to the Settlement Class as fully described in the Settlement Agreement. The plan for giving Notice, in form, method, and content, fully complies with the requirements of Fed. R. Civ. P. 23 and due process and is due and sufficient notice to all persons in the Settlement Class. In addition, the Court finds that no notice other than that specifically identified in the Settlement Agreement is necessary in this action.

*See* D.E. 57, ¶8.

As set forth in the Molina Declaration, ILYM Group: (a) printed and mailed the Notice of Settlement of Class Action, Exclusion Form and Objection Form ("Notice Packet"); (b) received

undeliverable Notice Packets; (c) received and validated requests for exclusion; (d) answered questions from Class Members; and (e) e-mailed counsel with reports. *See* **Exhibit B** at ¶3. If the settlement is approved ILYM Grouop will also: (f) calculate individual settlement payments, distribute these funds, and tax-reporting following approval; (g) mail out settlement checks; and (h) perform any other tasks the Parties mutually agree or the Court orders ILYM Group to do or perform. *See* **Exhibit B** at ¶3. The Richards Declaration confirms that counsel received reports, and that the website [www.FLLSettlementBlackRock.com](www.FLLSettlementBlackRock.com) was created by ILYM Group, and Notices and Claims Forms were successfully sent to 125 of the 152 identified Class Members, which informed Class Members of their rights, including the process to seek exclusion from the Settlement, object to the Settlement, and instructions on how to submit a proper and valid claims form as well as the deadlines associated with those actions. Accordingly, ILYM Group had a greater than 82% success rate in reaching the members of the class. In total, 10 valid claims forms were submitted which constitutes a 6.58% participation rate (or an 8% participation rate of the notices that were actually delivered). *See* **Exhibit A**; **Exhibit B**.

    c. **Class Notice was Reasonably Calculated to Inform Settlement Class Members of their Rights**

In this case, the Notice provided to class members:

(1) Defined the Settlement Class;
(2) Described the release provided to Defendants under the Settlement;
(3) Described the amount and proposed distribution of Settlement proceeds;
(4) Informed Settlement Class Members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing;
(5) Notified Settlement Class Members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Settlement Agreement, as well as other important documents; and
(6) Notified Settlement Class Members that class counsel intends to seek attorney's fees and expenses of up to $51,500.00.

*See* D.E. 54-1.

The notice procedure satisfied due process requirements because it described "the substantive claims… and contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *See Colourpop Cosmetics*, 2020 WL 5848620 at *4.

The Settlement Website created by ILYM Group provided continuing notice and access to important documents filed in the case, including the Settlement Agreement, Court Orders, and

other documents regarding the Final Approval Hearing. Moreover, the settlement was properly publicized, and the notice reached 82% of the Class Members (i.e. 125 of the 152 Class Members). *See* **Exhibit A**; *see, also,* **Exhibit B** at ¶13; *Windheim v. Tipsy Joe Corp., et. al.,* S.D. Fla. Case No. 0:22-cv-60278-CMA at D.E. 55 (Jan. 20, 2023) (granting final approval of wage and hour class settlement). Any member of the Settlement Class who wished to express comments or objections had ample opportunity to do so. Despite that opportunity, not a single class member has opted out from the class and there are no objections to the terms of the settlement. *Id.*

### (d) Settlement Obtained on Behalf of the Class is Reasonable

When reviewing a class settlement, "the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members receive as much from a settlement as they might have recovered from victory at trial." *See, e.g., Colourpop Cosmetics*, 2020 WL 5848620 at *5. The Eleventh Circuit has also instructed district courts to consider several factors – often referred to as the *Bennett* factors. The *Bennett* factors include:

> (1) the likelihood of success at trial;
> (2) the range of possible recovery;
> (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;
> (4) the complexity, expense, and duration of litigation;
> (5) the substance and amount of opposition to the settlement; and
> (6) the stage of proceedings at which the settlement was achieved.

*See Bennett*, 737 f.2d at 986.

### (i) There is No Evidence of Fraud or Collusion

Defendant at all times aggressively disputed the claims in this case and the Parties only reached agreement after weeks of discovery and depositions and several days of negotiations. *See* **Exhibit A**. The Parties attended an early settlement conference with Magistrate Judge Hunt and were unable to resolve the claims at that early stage of the proceedings given the Parties' respective positions. *Id.* The Parties then engaged in discovery prior to extensive negotiations concerning the relief obtained in this case. *See* **Exhibit A**. Accordingly, there was no fraud or collusion in reaching the terms of this settlement.

### (ii) Likelihood of Success in Litigation

Beginning as early as the pre-suit stage of this claim, the Defendant disputed Plaintiff's allegations and denied all liability and wrongdoing. *See* **Exhibit A**. Class certification issues in this case were hotly contested. Defendant raised several arguments concerning Plaintiff's ability

to satisfy elements for class certification under Fed. R. Civ. P. 23 concerning the claims alleged under the Florida Minimum Wage Act. These arguments posed a significant hurdle to Plaintiff achieving class certification. Continuing this action presented several litigation hurdles, including, but not limited to, class certification, summary judgment briefing, trial, and potential appellate review following a final judgment. The Settlement secured significant monetary relief for the Class. Before deducting any amounts for attorney's fees, costs, individual consideration, or claims administrator expenses, the class fund yields a recovery of $1.29 for every single hour worked by a class member during the class period. Importantly, after the deduction of the aforementioned expenses, each class member could have received $0.36 for every single hour worked at the restaurant within the class period. This settlement avoids risk that Class Members would have possibly not obtained anything if case was decided on summary judgment or at trial in favor of Defendant. *See, e.g., Haynes v. Shoney's*, 1993 WL 19915 at *6 (N.D. Fla. 1993) ("The risks for all parties should this case go to trial would be substantial… It is possible that trial on the merits would result in… no relief for the class members… Based on… the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement… is a fair and reasonable compromise").

### (iii) Fairness, Adequacy, and Reasonableness of Settlement

In determining whether the settlement is fair in comparison to the potential range of recovery, the Court is guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988); *see, also, Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371 at *20 (S.D. Fla. 2021) (Goodman, M.J.). Courts regularly find settlements to be fair even where "plaintiffs have not received the optimal relief." *See, e.g., Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988).

The allocation formula provides a recover of approximately 12% of each class member's "best day in court" recovery and is therefore a fair, adequate, and reasonable settlement for the class. *See, e.g., Williams,* 2021 WL 8129371 at *20 *citing Hall*, 2014 WL 7184039 at *6 ("There is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment"); *see, also, Poertner v. Gillette Co.,* 618 F. App'x 624 (11th Cir. 2015); *Beber, et. al. v. Branch Banking & Trust Co., et. al.*, S.D. Fla. Case No. 15-cv-23294, ECF No. 109 (S.D. Fla. 2017) (approving class settlement with payment percentages of damages of 10%, 8%, and

5%); *In Re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1346 (S.D. Fla. 2011) (range 9% to 45% of damages was an "exemplary" result).[4] The relief obtained for the class is reasonable under the circumstances. *See, e.g., Segroughni v. Advantus Restaurant, Inc.*, M.D. Fla. Case No. 8:12-cv-02000-SDM-TBM (granting final approval to class comprised of 87 restaurant servers where common fund yielded an average award of $2,294.12 for each class member).

### (iv) Complexity, Expense, and Duration of Litigation

The length of time it would take to obtain relief on behalf of a class is a key factor to consider in evaluating the reasonableness of a class settlement. *See Ferron*, 2021 WL 2940240. The immediate benefit provided by a class settlement – compared to the time require to litigate class actions involving complex claims and defenses – weighs in favor of deeming a settlement fair, reasonable, and adequate. *Id. citing Colourpop Cosmetics*, 2020 WL 5848620 at *5.

Both sides in this case have been vigorously represented by experienced and competent counsel. *See* **Exhibit A**. The cost of conducting additional discovery would be substantial and would delay any recovery sought by the class. In light of the uncertainty as to the merits and timing of payment (if any) the settlement represents a fair compromise of claims. *See, e.g., Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982).

### (v) Lack of Opposition to the Settlement, Opinions of Class Counsel, Plaintiff, and Absent Settlement Class Members

Not a single class member objected to the terms of the class settlement. *See* **Exhibit A**. This supports the reasonableness of the settlement. *See, e.g., Ferron*, 2021 WL 2940240 ("The lack of opposition weighs strongly in favor of the Court's approval of the Agreement… A low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable") *citing Braynen v. Nationstar Mortg., LLC, et. al.*, 2015 WL 6872519 at *6 (S.D. Fla. 2015); *see, also, Burrows v. Purchasing Power, LLC*, 2013 WL 10167232 at *7 (S.D. Fla. 2013) ("No members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition"). Moreover, class counsel believes this is a fair and adequate settlement for the class in light of the circumstances surrounding the litigation. *See* **Exhibit A**; *see, also, Ferron*, 2021 WL 2940240

---

[4] Because each class member had the opportunity to receive 12% of their "best day in court" this recovery constitutes a more than 10% recovery and is therefore an "exemplary" result under prevailing case law. *See In Re Checking Account Overdraft Litig.*, 830 F.Supp.3d at 1346.

("the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation'"). During the Notice Period, there was a 4.61% participation rate based on the valid claims forms received by the Claims Administrator. *See* **Exhibit A**; **Exhibit B**; *see, also, Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1310 (S.D. Fla. 2005) (Altonaga, J.) (Granting final approval of class settlement where there was a 9.4% participation rate and 41 objections). Finally, Plaintiff is particularly pleased with the recovery, and no individual member of the settlement class has opted out of settlement. *See* **Exhibit A**.

### (vi) Stage at Which Settlement Was Achieved

Class counsel conducted pre-suit investigations, which included pre-suit discussions with defense counsel, participated in a Court supervised settlement conference, and then obtained necessary discovery throughout the litigation of this case in order to make a reasoned judgment concerning the class settlement. *See* **Exhibit A**. Accordingly, class counsel had an "appropriate appreciation of the merits of the case before negotiating." *See, e.g., Ferron*, 2021 WL 2940240 *citing Colourpop Cosmetics*, 2020 WL 5848620 at *5. Even though this settlement was reached slightly less than 6 months after the filing of the case, "early settlements are to be encouraged and only some reasonable amount of discovery should be required to make these determinations." *Id. citing Ressler v. Jacobson*, 822 F.Supp. 1551, 1554 (M.D. Fla. 1992).

### e. Rule 23 Settlement Class Satisfies the Requirements of Fed. R. Civ. P. 23

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g., Morefield v. NoteWorld, LLC*, 2012 WL 1355573 at *2 (S.D. Ga. 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.* Here, the settlement class satisfies the requisite Rule 23 factors detailed below.[5] The

---

[5] Federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law. *See, e.g., Kubiak v. S.W. Cowboy, Inc.*, 2014 WL 2625181 (M.D. Fla. 2014) (certifying opt-out Rule 23 class for FMWA claims); *Lopez v. Hayes Robertson Group, Inc.*, 2013 WL 10561294 (S.D. Fla. 2013) (certifying opt-out Rule 23 class of FMWA claims regarding allegations of an illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640 (M.D. Fla. 2012) (certifying Florida state wage and hour claims); *Rosario-Guerro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010) (same); *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. 2009) (same); *Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790224 (M.D. Fla. 2008) (same). Class certification is appropriate even in cases where certification of an opt-in collective action is denied.

Court previously granted preliminary approval and class certification. *See* D.E. 57. Thus, the Court should grant final certification of the settlement class.

### i. Numerosity

Here, there were 152 members of the settlement class of Servers and Bartenders. For a variety of reasons, their joinder is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met. *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members); *Seghroughni*, 2015 WL 390329 (numerosity satisfied based on 87 class members); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) ("less than twenty-one is inadequate, more than forty is adequate, with numbers between varying according to the other factors"); *Windheim,* (numerosity satisfied based on 58 class members).

### ii. Commonality

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *See, e.g., Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendants' class-wide pay policies and practices relating to whether the proper notice and amounts related to the reduced Florida wage was paid to Servers – an issue that is common to the entire Settlement Class.

### iii. Typicality

The Plaintiff's claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pray policies and practices of Defendants, arise from the same legal theories, and allege the same type of harm and entitlement to relief. Therefore, Rule 23(a)(3) is satisfied. *See, e.g., Komberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984 (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

#### iv.  Adequacy

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant*, 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiffs and the settlement class, and Plaintiff has retained competent counsel to represent him and the settlement class. Class Counsel here regularly engages in wage and hour class litigation in several states across the country and other complex litigation similar to the present Litigation and have dedicated substantial resources to the prosecution of the Action. *See* **Exhibit A**. Further information concerning Class Counsel's credentials can be found in the Richards Declaration attached hereto. *Id.* Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the Litigation and have obtained a resolution that benefits all members of the putative class. *See Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000).

#### v.  Predominance and Superiority

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 58 settlement Class Members in a single, coordinated proceeding is superior to 58 individual lawsuits addressing the same legal and factual issues. With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law… ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *See, e.g., Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all settlement Class Members in a single common judgment. *See In re Checking Account Overdraft Litig.*, 2012 WL 4173458 at *3 (S.D. Fla. 2012).

In sum, all of Rule 23's requirements are met for the purposes of granting final approval for the settlement class. Thus, the Court should grant final certification of the settlement class and approve the settlement.

### f. Approval of the Settlement is Appropriate Under Federal Law

Plaintiff also requests that the Court approve the settlement of Plaintiff's FLSA claims. Unlike the procedure under Rule 23, individuals who seek to pursue claims under the FLSA must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *See Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354. In this case, the settlement for Plaintiff's FLSA claims and consideration for release of non-FMWA claims was reached as a result of litigation and arm's-length negotiation involving vigorous back and forth. *See* **Exhibit A**. Notably, under the terms of the settlement agreement, only Plaintiff is waiving FLSA-related claims. *See* D.E. 54-1. None of the Rule 23 class members are waiving any FLSA claims. *See* D.E. 54-1. During the litigation Plaintiff and Defendant were represented by counsel experienced in wage and hour law. Because the Settlement Agreement resolves a clear and actual dispute in contested litigation, and was resolved through arm's-length settlement negotiations, it should be approved.

### V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant final approval of the class settlement, certify the settlement class, and enter the Proposed Order attached.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Pursuant to S.D. Fla. L.R. 7.1(a)(3), prior to the filing of the instant motion, the Parties conferred and agree as to the relief sought herein.

**Dated: December 4, 2023.**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS - JORDAN RICHARDS, PLLC**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
(954) 871-0050
*Counsel for Plaintiffs*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
jordan@jordanrichardspllc.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing motion was filed through CM/ECF this 4th day of December 2023 and served on the counsel listed below.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST

**MATTHEW GREEN, ESQ.**
Florida Bar No. 1019717
COLE, SCOTT & KISSANE LLP
110 S.E. 6th Street, Suite 2700
Fort Lauderdale, Florida 33301
E-mail: matthew.green@csklegal.com
*Counsel for Defendant*